# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JAN 0 6 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| ROGER L. KEELING, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. H-03-3594 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner Roger L. Keeling, an inmate of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), proceeding *pro se* and *in forma pauperis*, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his conviction for aggravated assault. Respondent Douglas Dretke, the TDCJ director, has moved for summary judgment, (Docket Entry No. 11), and submitted a copy of the state court record. Keeling has filed a response. (Docket Entry No. 12).

After careful consideration of the pleadings; the motion; the response; the record; and the applicable law, this court grants Dretke's motion and, by separate order, enters final judgment dismissing Keeling's petition. The reasons for this ruling are set out below.

# I.   Procedural Background

Keeling was charged with aggravated sexual assault under cause number 27,242-272 in the 272nd District Court of Brazos County, Texas. The jury found him guilty of the lesser included offense of aggravated assault. *Ex parte Keeling*, Application Number 26,072-03. After finding two enhancement paragraphs "true," the trial court on March 8, 2000 sentenced Keeling to fifty years incarceration in TDCJ. The conviction was affirmed on appeal. *Keeling v. State,* No. 01-00-00590-CR (Houston –[1st Dist.] 2001, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused Keeling's petition for discretionary review on April 17, 2002. *Keeling v. State*, PDR No. 2294-01. On August 22, 2002, Keeling filed an application for state habeas corpus relief. The Texas Court of Criminal Appeals denied that application on March 19, 2003, without a written order. *Ex parte Keeling,* Application No. 26,072-03, at cover.

On September 3, 2003, Keeling filed the pending federal habeas corpus petition. He raised the following grounds for relief:[1]

1)   Ineffective assistance of trial counsel, Lane Thibodeux, in failing to:

    a.   investigate and consult;

    b.   research the law;

    c.   object properly to illegally-obtained evidence, an invalid charging instrument, and the prosecutor's improper jury comments, and to preserve those issues for appeal;

---

[1] These grounds for relief appear in Keeling's memorandum of law. (Docket Entry No. 6). The court has grouped and renumbered them for clarity and convenience.

d.   properly conduct the punishment phase of trial;

e.   obtain a DNA expert to rebut the State's DNA evidence; and

f.   conduct a proper cross-examination.

2)   Unlawful searches and seizures.

3)   Violations of the Texas Code of Criminal Procedure.

4)   Lack of jurisdiction due to a fundamentally defective charging instrument.

5)   Illegal government action.

6)   Denial of a fair trial due to cumulative error.

Dretke moves for summary judgment on all of these grounds for relief. Each ground is analyzed below.

## II.   Factual Background

In affirming Keeling's conviction, the state court on direct appeal summarized the relevant facts, as follows:

> [Complainant] testified that a pick-up truck pulled to the side of a highway, where she was walking, and the driver asked her if she needed a ride; [she] accepted. The driver then told [her] that he was taking her "out to the country" so that they could drink a beer. [Complainant] did not consent to the trip "to the country."
>
> During the trip, the driver demanded that [complainant] have sex with him. The driver stopped the truck, made advances toward [complainant], and asked that she perform oral sex. When she refused, the driver struck her in the mouth. The driver repeatedly hit [complainant] with his fists and caused her to lose a tooth. [Complainant] testified that when she regained consciousness, she was in the front seat of the pick-up and that

she was in extreme pain because she felt an object in her rectum. The driver then demanded that [complainant] perform oral sex and threatened to kill her. After [complainant] complied, the driver pushed [complainant] out of the truck and kicked her repeatedly. Then the driver fled, leaving [complainant] stranded. When found by the police, [complainant] was unable to sit upright, and her eye was swollen shut. She was later hospitalized for two nights. She had torn tissue in her rectum, and a doctor who examined her opined the object forced into [complainant] could have been a broom handle.

[Complainant] never identified [Keeling] as the assailant and, when asked to describe the person who was driving the truck, she answered, "It was a white male." However, she identified [Keeling's] truck, in which her blood was found.

*Keeling*, at 2-3. Police officers obtained and executed two search warrants in investigating the case. During the investigation, officers impounded Keeling's truck and obtained from him hair and body fluid samples.

On collateral review to the state court, Keeling complained of illegal search and seizure, lack of jurisdiction, and ineffective assistance of counsel. At the state court's request, trial counsel submitted an affidavit. *Ex parte Keeling*, pp. 125-142. The state court denied habeas relief and entered the following relevant findings:

2.  Applicant's grounds for relief have no basis in the record and are completely without merit.

4.  A review of the applicant's claims of ineffective assistance of counsel establishes that the applicant fails to show deficient performance of counsel, much less harm, in the following areas:

    (a)  the alleged failure to have a firm grasp on the facts concerning the two search warrants such that counsel was not able to suppress evidence;

| (b) | the alleged failure to object to evidence admitted during trial; |
|---|---|
| (c) | the alleged failure to object to improper charging instrument; |
| (d) | the alleged failure to retain an investigator in a timely manner; |
| (e) | that counsel was not allegedly prepared to cross-examine Audrey Leonard;[2] |
| (f) | that counsel allegedly did not object to preserve for appellate review the denial of complainant's drug usage; |
| (g) | for calling only one witness in defense during the guilt-innocence phase; |
| (h) | for not requesting a DNA expert to impeach the State's DNA expert; |
| (i) | for arguing that applicant assaulted the victim during closing argument; |
| (j) | that the cumulative effect of any alleged errors caused harm; and |
| (k) | the alleged failure to call witnesses during the punishment phase. |

*Ex parte Keeling*, pp. 208-09.

Dretke argues that Keeling failed fairly to present to the state courts his arguments that he received ineffective assistance in jury argument in and impeaching the complainant, and illegal government action. Dretke contends that these grounds are unexhausted and need not be addressed by this court under 28 U.S.C. §§ 2254(b) and (c). Dretke concedes that Keeling's remaining arguments were exhausted. This court will address all Keeling's claims on the merits. *See* 28 U.S.C. § 2254(b)(2).

---

[2] The complainant walked to Audrey Leonard's house after the assault and asked for help. Leonard called the police. (Vol. 3, pp. 30-35).

## III.     The Applicable Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to Keeling's petition. The AEDPA limits the scope of collateral review to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent permitted under the law. *Bell v. Cone*, 535 U.S. 685, 693 (2002); *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003). Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state court adjudication was contrary to clearly-established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. The "unreasonable application" standard requires the state court decision to be more than

incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable. *Lockyer v. Andrare*, 538 U.S. 63, 75 (2003).

The AEDPA requires federal court deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31. These standards are applied to the pending motion for summary judgment.

## IV.    The Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that counsel's actions fell below an objective standard of reasonableness and that petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668 (1984); *Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001). The district court may resolve an ineffective assistance claim if counsel either rendered reasonably effective assistance or no prejudice can be shown. A court evaluating such a claim need not address the reasonableness component first. If a petitioner fails to make one of the required showings, the court need not address the other. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is within the range of practical choices not to be second-guessed. *Rector v. Johnson,* 120 F.3d 551, 564 (5th Cir. 1997). An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." *Strickland*, 466 U.S. at 691; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). A conscious, informed decision on trial tactics and strategy cannot form the basis for constitutionally ineffective assistance of counsel unless it is so ill-chosen that it permeates the entire trial with obvious unfairness. *Moore v. Johnson*, 194 F.3d 586, 591-92 (5th Cir. 2000). It is petitioner's burden to overcome the presumption that the challenged conduct "might be considered sound trial strategy." *Bell v. Cone*, 535 U.S. 685, 698 (2002). As to the prejudice prong of the inquiry, a convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Keeling asserts six areas of ineffective assistance of counsel.

## A.    The Claims of Failure to Investigate and Consult

Keeling claims that he was denied effective assistance of counsel because trial counsel

failed to (1) interview the judges who signed the search warrants; (2) interview the county

deputy sheriff regarding removal of the truck; (3) interview and procure personnel records

for county sheriff's department investigators who worked on the search warrants; (4) procure

county sheriff's department radio logs and communication tapes regarding removal of the

truck; (5) file and argue a fact-specific motion to suppress; (6) discover whether county

sheriff's department officers were on the scene when the second warrant was executed; (7)

interview county sheriff's department investigators regarding their statements in the search

warrant affidavits; and (8) notify authorities that a county sheriff's department investigator

had deliberately lied in his affidavit. (Docket Entry No. 6, pp. 6-8).

In his affidavit submitted to the state court on collateral review, trial counsel testified

in relevant part as follows:

> [I] was able to counsel with [Keeling] early in the case
> concerning trial strategy that he and [complainant] had engaged
> in some type of sex, it was consensual, and that he had not
> sodomized [her].
>
> *   *   *   *
>
> [Keeling] has alleged that I failed to have a firm grasp of the
> facts concerning the two search warrants such that the evidence
> collected by the search warrants was not suppressible. After
> review of the medical records and speaking with the health care
> professionals in the case, it was my opinion that the information
> secured by the evidence gathered during the search warrants in
> fact supported our trial strategy in the case. A Motion to
> Suppress Evidence was heard prior to testimony being secured

> at trial; nevertheless, the trial strategy in the case given that the evidence, I felt, actually supported our theory was to secure discovery and have an opportunity to cross-exam[ine], outside the presence of the jury, Brazos County Investigators Fred Kindell and Ralph Jones.

*Ex parte Keeling*, pp. 125, 131. In his affidavit, counsel discussed at length his investigation and preparation for trial, including his review of complainant's medical records and other evidence of the incident, and his procurement of favorable medical testimony consistent with the defense theory that the defendant and the complainant had consensual sex without sodomy. Counsel testified that he did not strenuously contest the search warrant procedures and evidence because the evidence was consistent with the defense theory of consensual sex, and the motion to suppress hearing was an opportunity to gather information outside the jury's presence. This trial strategy was successful; the jury did *not* find Keeling guilty of aggravated sexual assault, but only of the lesser-included offense of aggravated assault. *Id.,* pp. 127-136. Keeling fails to show any deficiencies in trial counsel's actions or rebut the presumption of reasonable trial strategy.

Keeling alleges that counsel failed to consult with him about the search warrants. The trial court impliedly found counsel credible in his affidavit testimony that he consulted with Keeling on this issue. The Texas Court of Criminal Appeals implicitly relied on this finding in denying habeas relief. Keeling fails to rebut the presumed correctness of the finding with clear and convincing evidence.

The state habeas court found that Keeling failed to meet his burden of proving ineffective assistance of counsel under these arguments. *Ex parte Keeling*, pp. 208-09. The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance claims. Keeling fails to show that but for counsel's alleged deficiency, the result of the trial would have been different. Because Keeling has failed to show either deficient performance or prejudice, there is no basis for the relief he seeks under these ineffective assistance claims. 28 U.S.C. § 2254(d)(1).

## B.    The Claims of Failure to Research

Keeling further asserts that trial counsel failed adequately to research the law as to the cross-examination of witnesses, illegal search and seizure, and related evidentiary matters. To the extent these arguments are variations of his complaints discussed above, the arguments fail to demonstrate any violation of Keeling's right to counsel, for the reasons previously stated.

Keeling complains that his counsel failed to establish as a defense theory that the complainant was a known prostitute and drug abuser. (Docket Entry No. 6, p. 9). The record, however, clearly demonstrates the contrary. The following testimony of trial counsel

in the affidavit filed in the state habeas court discusses the introduction of evidence of complainant's drug usage:

> [E]vidence of the victim's previous use of cocaine was first introduced in front of the jury as a result of my own investigation and work in securing medical records from St. Joseph establishing the alleged victim had been twice admitted to the hospital, testing positive for cocaine.
>
> The evidence of prior drug use by the alleged victim was brought to the attention of the jury by myself *before* the alleged victim testified. Because this evidence was already in front of the jury, the alleged victim admitted to bing[ing] on cocaine in the days before her encounter with [Keeling]. Therefore, evidence of the alleged victim's drug habits was already in front of the jury, consistent with my trial strategy in the case, that no sodomy occurred and any sexual contact between the alleged victim and [Keeling] was a result of consensual sexual activity.

*Ex parte Keeling*, p. 134 (original emphasis).

Keeling's argument that his counsel was ineffective in failing to tell the jury about complainant's sexual history does not provide a basis for relief. The record shows that the trial court overruled counsel's efforts to put before the jury evidence that Keeling picked up complainant in an area frequented by prostitutes. (Vol. 3, pp. 191-93). Even assuming that evidence of complainant's prostitution was available and admissible, the jury did not find Keeling guilty of sexually assaulting complainant. Keeling fails to show that such evidence was relevant to the aggravated assault charge and fails to show ineffective assistance or prejudice under *Strickland*.

The state habeas court found that Keeling failed to meet his burden of proving ineffective assistance of counsel under these arguments. *Ex parte Keeling*, pp. 208-09. The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance claims. Keeling fails to show a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## C.    The Claims of Failure to Object and Preserve Error for Appeal

Keeling next argues that his trial counsel failed to object properly at trial to preserve error for appeal. The deficiencies in the similar arguments are discussed above. This claim fails to provide a basis for relief.[3]

Keeling alleges that his trial counsel failed to object to the prosecutor's jury arguments, in which the prosecutor called him an "animal" and a "predator," made the statement, "I don't know about you ladies but the hockey look just don't get it," and falsely stated that the complainant had suffered a broken jaw during her encounter with Keeling. As to the last claim, the complainant's dentist testified at trial that he examined complainant

---

[3] Keeling complains the counsel failed to challenge the trial court's jurisdiction by raising the argument of a fundamentally defective amended indictment. This argument is subsumed under Keeling's fourth ground for habeas relief, and will be discussed in that portion of the opinion.

shortly after the encounter, and found that a bone in her jaw had been fractured. (Vol. 4, p. 37). The record contradicts Keeling's claim of a false statement by the prosecutor in final argument; there is no basis to find that counsel should have objected.

The record shows that during jury argument at the guilt-innocence phase of trial, the prosecutor stated, "Members of this jury, what's [Keeling] doing out there on the streets at 3:00 in the morning? He's out there because he was a predator, and that night [complainant] was the prey. He is the one that set this in motion. She was high; she was drunk; and she was a darn easy target." (*Id.*, pp. 121-22). The prosecutor also stated, "This case is about that man being an animal and taking a woman off the streets that he could get off the streets and beating the heck out of her and shoving some object, we still don't know, up her and threatening her and dumping her out." (*Id.*, p. 123).

Evidence in the record showed that Keeling had been driving around late at night and through the early morning hours, looking for women. (*Id.*, p. 99-101). He eventually saw complainant at around 2:00 a.m. She got into his truck. (*Id.*). Keeling drove her out to a remote area of town; beat her, knocking out her tooth; and drove off, leaving her stranded along a rural back road.

Under both state and federal law, a proper jury argument must fit in one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Buxton v. Collins*, 925 F.2d 816, 825 (5th Cir. 1991); *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim.

App. 1999). The State's arguments reasonably fall within one or more of these areas of proper argument; counsel was not ineffective for failing to make futile objections. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Moreover, the decision whether to object during jury argument is a matter of trial strategy that a federal habeas court should not lightly second guess. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Keeling fails to point to or present evidence to rebut the presumption of reasonable trial strategy or to show prejudice.

The state habeas court found that Keeling failed to meet his burden of proving ineffective assistance of counsel under these arguments. *Ex parte Keeling*, pp. 208-09. The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding. *Id.* at cover. The state court's finding reasonably applied the law to the facts, consistent with clearly established federal law, and was not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance claims. Nor has Keeling identified a reversible error that counsel failed to preserve for appeal. Keeling fails to show a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

### D. The Claims of Ineffective Assistance at Punishment Phase of Trial

Keeling claims that his trial counsel failed to investigate and present twelve defense witnesses at the punishment phase of trial. (Docket Entry No. 6, p. 29). Keeling presents no affidavits, testimony, or other evidence demonstrating that these potential witnesses were

available for trial or what testimony they would have given. In his affidavit submitted to the state court, trial counsel testified as follows:

> I consulted with [Keeling] concerning eliciting testimony from Wanda or Jennifer Keeling, [Keeling's] wife and daughter. I also talked to both individuals several times during my representation of [Keeling]. I believed testimony would corroborate that [Keeling] could be a heavy drinker.

> Walter Hughes is one of the individuals listed by [Keeling] as a possible punishment witness he alleges I failed to call. I believe this individual to be Walter Lee Hughes aka Scooter Hughes. If so, at the time of [Keeling's] trial, Hughes had a felony conviction in Robertson County, Texas for Possession of a Controlled Substance. At the current time, Hughes is incarcerated in the Federal Penitentiary on a Federal conviction for Possession of a Firearm by a Felon. Billie Hughes, another witness listed by [Keeling] in his Writ, is Walter Lee Hughes's mother.

> John Becker, was an employer of [Keeling] that I believed testified at [Keeling's] bond hearing. In any event, I had interviewed Becker and believed his testimony was not strong and would have minimal effect given the weight of evidence concerning the enhancement, particularly enhancement paragraph number one.

> I conferred with [Keeling] prior to the commencement of the punishment hearing and advised him I was not planning on calling punishment witnesses and the reasons for it. Specifically, I counseled [him] that I felt that Jennifer Keeling and Wanda Keeling could possibly do more damage than good given their knowledge of [Keeling's] use of alcohol, which, I believed, the State would argue, given the evidence, led to his conviction on the Aggravated Assault. I informed [Keeling] that the jury had not convicted him on the Aggravated Sexual Assault charge, the allegation on which most of the trial centered upon. I further informed [him] that although he had been convicted of Aggravated Assault–Serious Bodily Injury,

that the injuries to the alleged victim had not been life threatening. I informed [Keeling] that in the absence of any compelling evidence of 12 step program involvement or other type evidence pertaining to ending his use of alcohol, that, given the favorable outcome of the Aggravated Sexual Assault allegation and the other information related above, the defense should rest without calling witnesses. [Keeling] assented to this reasoning and strategy.

*Ex parte Keeling*, pp. 140-142.

The state habeas court found that Keeling failed to meet his burden of proving ineffective assistance of counsel under these arguments. *Ex parte Keeling*, pp. 208-09. The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding. *Id.* at cover. The state court's finding reasonably applied the law to the facts, consistent with clearly-established federal law, and was not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance claims. Trial counsel's decision as to what witnesses to call is a matter of trial strategy, which this court will not second guess. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999). Keeling does not allege or point to facts showing that trial counsel's decisions on witnesses were so ill-chosen that they permeated the entire trial with obvious unfairness. *See Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). For Keeling to demonstrate prejudice under *Strickland*, he must show that the witnesses would have testified at trial and that their testimony would have been favorable. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Keeling fails to submit evidence of availability or what these alleged

witnesses would have stated. He shows neither deficient performance or prejudice that would merit relief. 28 U.S.C. § 2254(d)(1).

### E. The Claim of Failure to Obtain Rebuttal DNA Expert

Keeling alleges that his trial counsel was ineffective in failing to obtain a DNA expert to rebut the State's DNA evidence. Trial counsel stated the following in his affidavit submitted to the state court on collateral review:

> When I reviewed the DNA collected as a result of the search warrant and the report of Jane M. Burgett ("Burgett"), a criminalist from the Texas Department of Public Safety, it was my conclusion that the DNA testing conducted by her on various objects supported the defense trial strategy and theory of the case. Specifically, no semen from [Keeling] was detected in the vaginal or rectal specimens from the rape kit. Additionally, no trace evidence was observed in the fingernail scrapings. Likewise, the absence of semen in the vaginal, oral, or rectal specimens from the rape kit was consistent with the defensive trial strategy that no rectal [sic] penetration was made by [Keeling] either vaginally or rectally.

> \*    \*    \*    \*

> [Keeling] additionally alleges I was ineffective as I failed to request a DNA expert to impeach the State's DNA expert and I failed to investigate the qualifications of the State's experts and failed to determine if DPS DNA met minimum guidelines set by the FBI. As I stated above I interviewed the DNA expert, Jane M. Burgett. I secured a copy of her resume. As stated above, no DNA expert was secured to impeach the State's expert as her testimony supported, even corroborated, the defense trial strategy and theory of the case.

*Ex parte Keeling*, pp. 128, 136.

The state habeas court found that Keeling failed to meet his burden of proving ineffective assistance of counsel under this argument. *Ex parte Keeling*, pp. 208-09. The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding. *Id.* at cover. The state court's finding reasonably applied the law to the facts, consistent with clearly-established federal law, and was not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance claims. Keeling fails to present any evidence that favorable DNA expert testimony was available or that it would have altered the outcome. The jury did not find Keeling guilty of the aggravated sexual assault charge, for which the DNA evidence was admitted. Keeling fails to establish either deficient performance or prejudice under *Strickland*. There is no basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## F.     The Claim of Ineffective Cross-Examination

Keeling further asserts that counsel was ineffective in his lack of preparation to cross-examine the State's witness, Audrey Leonard. Keeling points to the following record excerpt:

| DEFENSE COUNSEL: | Do you remember getting a call from my investigator yesterday? |
|---|---|
| A: | Yes, sir. |
| DEFENSE COUNSEL: | And, in fact, my investigator told you at that time that he just wanted to have the same opportunity to discuss with |

|                 | you the facts of this case as you were going to afford [the State]; is that true? |
|-----------------|---------------------------------------------------------------------------------|
| A:              | No, sir. He asked me had I been examined by a medical doctor, and I told him I did not understand his question. And he said, "Were you there in the exam room?" And I said, "I'm sorry, sir, but I don't understand what you're asking me." |
| DEFENSE COUNSEL: | Did you offer to give him any type of information about what you had? |
| A:              | No. |

(Vol. 3, pp. 36-37). Keeling does not identify what evidence his counsel should have obtained from this witness during cross-examination. Nor does Keeling show that he was prejudiced by the cross-examination that did occur.

Keeling presented the same record excerpt to the state court on collateral review as proof of counsel's ineffectiveness. The state court expressly rejected the argument. *Ex parte Keeling*, pp. 208-09 (Finding of Fact No. 4(e)). The Court of Criminal Appeals implicitly based its denial of habeas relief on this finding. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance claims. Even assuming error by counsel, Keeling fails to establish he was prejudiced by trial counsel's performance. Keeling shows no basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## V.    The Claims of Unlawful Search and Seizure

Keeling contends that his conviction was the result of evidence obtained pursuant to an unlawful search and seizure. Federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search and seizure. *Stone v. Powell*, 428 U.S. 465, 489-95 (1976). Once a petitioner has been given a "full and fair" opportunity to litigate a Fourth Amendment claim, the claim is barred even if the petitioner maintains that the state trial court's decision was erroneous. *See Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986). Under *Stone*, a Fourth Amendment claim is barred unless the petitioner alleges "that the process provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of [such] claims on their merits." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980). As long as the state court record reflects, as it does here, that a petitioner's opportunity to challenge the introduction of evidence was not denied, a federal habeas court is without authority to "scrutinize a state court's application of fourth amendment principles." *See Billiot v. Maggio*, 694 F.2d 98, 100 (5th Cir. 1982).

The record shows that Keeling was provided a pretrial hearing on his motion to suppress. (Vol. 2, pp. 163-175). The record shows that Keeling had and used a full and fair opportunity to litigate his fourth amendment claims in state court. Habeas relief is not merited under this argument.

## VI.    The Claims of State Law Violations

Keeling generally argues that the trial court violated articles 18.04, 18.09, 18.10, and 38.22 of the Texas Code of Criminal Procedure by failing to exclude the two search warrants. These claims allege violations of state law and do not raise any federal constitutional issues. *See Mayabb v. Johnson*, 168 F.3d 863, 869-70 (5th Cir. 1999). Federal habeas grounds required a showing that the alleged state law violations made the entire trial fundamentally unfair, denying due process. *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998). The record in this case does not demonstrate a fundamentally unfair trial or a denial of due process. Keeling is not entitled to habeas relief under these arguments.

## VII.   The Claims of Lack of Jurisdiction due to Fundamental Defect

Keeling next claims that the trial court lacked jurisdiction because the original indictment was quashed and state law procedures were not followed in amending the indictment. As counsel stated in his affidavit,

> [Keeling] was indicted by charging instrument filed on or about August 26, 1999. The original indictment alleged Aggravated Sexual Assault only. A Motion to Quash the original indictment was filed on September 13, 1999. [Keeling] was thereafter reindicted twice, once on February 10, 2000, and again in February 22, 2000. A second Motion to Quash was filed on February 22, 2000. Both reindictments contained language alleging Aggravated Sexual Assault and Aggravated Assault....
>
> As a result of the Motion to Quash, the State filed a Motion to Amend Indictment to specifically allege the manner in which the alleged victim was sexually assaulted (sodomy) and the manner and means in which the alleged Aggravated Assault occurred (hitting the alleged victim in the mouth with his fist).    The

> State's Motion to Amend Indictment was filed on or about
> February 24, 2000.

*Ex parte Keeling*, pp. 125-26. On February 24, 2000, the State filed its motion to amend

indictment. The trial court granted Keeling's motion to quash the indictment, (Clerk's

Record, pp. 67, 68-69), and granted the State's motion to amend the indictment, (*id.*, p. 68,

handwritten notation and signature).

Keeling contends that because the trial judge granted the State's motion to amend by

simply writing "Granted" and signing the bottom of the motion, no leave to amend was

properly ordered and the amended indictment was void, depriving the trial court of

jurisdiction. Keeling presented this argument to the state court on collateral review. The

state habeas court found that "[Keeling's] grounds for relief have no basis in the record and

are completely without merit." *Ex parte Keeling*, p. 208 (Finding of Fact No. 2). "The

question whether a defective state indictment confers jurisdiction on the state trial court is

a matter of state law." *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994). "The sufficiency

of a state indictment is not a matter for federal habeas corpus review unless it can be shown

that the indictment is so defective that the convicting court had no jurisdiction." *Alexander*,

775 F.2d at 598.

Federal courts will not consider claims that a state indictment is insufficient to confer

jurisdiction upon the trial court when the jurisdictional issue "was squarely presented to the

highest court of the state" and it can reasonably be inferred that that court passed on the

merits of the jurisdictional claim. *Id.* at 598-99. In a habeas proceeding, this court does not

sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). In this case, the Texas Court of Criminal Appeals passed on the merits of the allegedly void indictment when it denied Keeling's state habeas application and found his claims to be "completely without merit." In so doing, the state habeas court implicitly found that the trial court had jurisdiction over Keeling's case. The record presents to basis for rejecting this finding.

As a corollary to this claim, Keeling contends that his trial counsel was ineffective in failing to challenge the trial court's jurisdiction because of the allegedly fundamentally defective indictment. Keeling has not shown that the indictment was fundamentally defective, so as to deprive the trial court of jurisdiction. His counsel was not ineffective in failing to challenge the trial court's jurisdiction. The state court rejected Keeling's claims of ineffective assistance, including the alleged failure to object to the charging instrument. *Ex parte Keeling*, pp. 208-09. The Court of Criminal Appeals implicitly based its denial of habeas relief on the state habeas court's findings. *Id.* at cover. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. An independent review of the state court record does not reveal clear and convincing evidence that would rebut the presumption of correctness of the state court's adjudication of Keeling's ineffective assistance or jurisdiction claims. Keeling fails to show a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## VIII.  The Claims of Illegal Government Action

Keeling next argues that his due process rights were violated because the State knew that defense counsel was ineffective and that the evidence obtained by the illegal search and seizures was inadmissible.  Relying on *Passmore v. Estelle*, 607 F.2d 662, 663 (5th Cir. 1979), Keeling asserts that the criminal justice system in his case "so grossly malfunctioned" as to deny him due process.

The Fifth Circuit has set out the standard for analyzing such claims:

> To find state involvement in retained counsel's conduct which is adjudged to be less than reasonably effective, yet not so grossly deficient as to render the proceedings fundamentally unfair, it must be shown that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused.  That the trial judge and the prosecutor have such a capacity and duty is unquestionable.  Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied.  If they directly participate in the incompetency, it is even more so.  Furthermore, if the incompetency of a retained attorney's representation is so apparent that a [r]easonably attentive official of the state should have been aware of and could have corrected it then again the state action requirement is satisfied.

*Id.*  This court has found that Keeling has failed to demonstrate ineffective assistance of counsel.  He cannot show the State's involvement in knowingly failing to remedy a Sixth Amendment violation, or that the violation was so apparent that the prosecutor should have taken remedial action. Keeling is not entitled to habeas relief under this argument.

## IX.    The Claims of Cumulative Error and Denial of Fair Trial

Keeling last claims that due to the cumulative effect of the trial court's errors and his counsel's deficiencies, he was denied a fair trial. Because Keeling has failed to show error or deficiency, there is no cumulative error that denied due process. *See, e.g., United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002) ("He has not established *any* error; therefore, there is nothing to cumulate.") (emphasis in original). Keeling fails to show meritorious grounds for habeas relief.

## X.    Conclusion

Respondent Dretke's motion for summary judgment, (Docket Entry No. 11), is granted. Keeling's petition for writ of habeas corpus is denied. This case is dismissed with prejudice.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must obtain a certificate of appealability before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). This court will grant a COA only if the petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has denied a claim on procedural grounds, however, the petitioner must also demonstrate that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

As recently made clear by the Supreme Court in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), a COA is a jurisdictional prerequisite, and until a COA has been issued, federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners. When considering a request for a COA, the question is the debatability of the underlying constitutional claim, not the resolution of that debate. *Id.* at 342.

Because Keeling has not made the necessary showing, this court will not issue a COA.

SIGNED on January 6, 2005, at Houston, Texas.

Lee H. Rosenthal
United States District Judge